Lease *v.* Pennsylvania Company.

Filed May 18, 1894.

---

No. 984.

## LEASE *v.* PENNSYLVANIA COMPANY.

MASTER AND SERVANT.—*Railroad.*—*Negligence.*—*Contract Against Liability.*—*Relief Department.*—*Public Policy.*—A contract whereby an employe, in case of injury through the employer's negligence, may elect to accept benefits through a relief department, thereby releasing the employer from liability, or to sue for damages, is not a contract against future liability for negligence, and is not void as being against public policy.

SAME.—*Acceptance of Benefits From Relief Fund.*—*Release of Claim for Damages.*—Where, in such case, the employe, after injury, elects to accept benefits from the relief fund, he waives the other remedy, and can not sue for damages, and the fact that the fund was promoted in part by his own contributions does not alter the case.

SAME.—*Mutuality of Contract.*—A contract of membership in a relief department operated by a railroad company for the benefit of its employes, and composed of the company and contributing employes, which stipulates that the acceptance of benefits from the relief fund, in the event of injury, releases the company from any claim for damages, is not void for want of mutuality.

SAME.—*Consideration of Contract.*—In such case, the release of the company from liability by accepting benefits from the relief fund is supported by a sufficient consideration where it appears that the company managed and was responsible for the safety of the relief fund, furnished the facilities for conducting the business, paid all operating expenses, supplied appropriations when necessary to make up deficits, and guaranteed the fulfillment of the obligations of the relief department.

From the Owen Circuit Court.

*D. E. Beem* and *W. Hickam*, for appellant.

*S. O. Pickens*, for appellee.

REINHARD, J.—The appellant brought this action to recover damages of the appellee for a personal injury alleged to have been incurred by him through appellee's negligence while the appellant was in its employment as a track foreman on appellee's railroad in its Indianapolis and Vincennes division.

The only question presented for our determination arises from the alleged erroneous ruling of the circuit court in overruling a demurrer to the fourth paragraph of appellee's answer. The gist of this answer is the payment to, and acceptance by, the appellant of benefits from the relief fund of the appellee's "Voluntary Relief Department," on account of the injury for which the action is instituted.

It is averred in the pleading under consideration that the appellant was a member of the relief association men-

tioned, which is composed of the different companies forming the Pennsylvania lines West of Pittsburgh, and their employes contributing to the relief fund, and has for its object the relief of such employes in cases of sickness or disability by accident, and the relief of their families in the event of death, by the payment to them of definite amounts out of a fund "formed by voluntary contributions from employes; appropriations, when necessary to make up any deficit, by the several companies respectively, and income or profit derived from investments of the moneys of the fund, and such gifts as may be made for the use of the fund."

The associated companies have general charge of the department, guarantee the fulfillment of the obligations assumed by them respectively in conformity with the established regulations, supply the necessary facilities for conducting the business of the department, and pay all the operating expenses thereof. The company has charge of the funds, and is responsible for their safe keeping. Employes of the Pennsylvania Company are not compelled to become members of the relief association, but may do so if duly admitted on written application, and may continue in such membership by paying certain monthly dues, the amounts thereof depending upon the respective classes which the members may choose to enter, and the corresponding benefits paid. A disabled member is also entitled to surgical attendance, at the company's expense, if injured in the company's service.

The appellant agreed, in his application for membership, "that the acceptance of benefits from the said relief fund for injury or death shall operate as a release of all claims for damages against said company, arising from such injury or death, which could be made by or

through me, and that I or my legal representatives will execute such further instrument as may be necessary formally to evidence such acquittance.''

Each company to the contract also agreed, ''in behalf of itself and employes, to appropriate its ratable proportion of the joint expenses of administration and management, and the entire outlay necessary to make up deficits for benefits to its employes.''

The appellant, it is further alleged, was a member of the relief association when injured and until after his recovery from such injury, and that he claimed as full benefits as a member of said relief fund for disability arising from such injury, for thirty-two days, viz:    For January, 1891, 31 days, for February, 1891, 1 day, at one dollar per day, to wit, $32, and that on the 5th day of March, 1891, the appellee paid the appellant out of said relief fund the sum of $32 in full for all benefits due and accrued to him as a member of said association, on account of said injuries, and in full discharge and release of all claims for damages against the appellee, arising from said injuries under the terms and conditions of his membership, which was accepted by him as benefits in full for said injuries, and that thereafter the appellant continued in the service of the appellee and was paid full wages therefor and made no further claim on account of said injuries until after he had been, for good and sufficient reasons, discharged by the appellee.

Many objections are urged against the validity of the contract relied upon, and upon which the alleged release is founded.    The controlling questions arising from these objections are enumerated in the brief of appellant's counsel as follows:    It is insisted that the contract is void—

1. Because it is against public policy, and is an at-

Lease *v.* Pennsylvania Company.

tempt, by the company, to exonerate itself, by contract, from the results of its own negligence.

2. Because of its want of mutuality.

3. Because it is without consideration and unconscionable.

It may be stated, as a general proposition, that a railroad company can not exempt itself from liability to its employes on account of injury resulting from its own negligence. But, in the contract under consideration, there was no stipulation that the appellant should not bring suit for damages in case of injury through the appellee's negligence, and there was nothing to prevent him from doing so. When he was injured, he had a right to elect, under the terms of the contract, whether he would pursue his remedy for damages in an action against the company, or accept the benefits of the relief fund in discharge of its liability to him. If he did the latter, he knew that, under the provisions of his contract, he would preclude himself from the benefits of the other remedy.

It was the same as if the company had said to him: "We will give you $32 out of this relief fund if you will release us from all further liability on account of the injury you sustained by reason of our negligence," and he had accepted the same. This is precisely what he did.

The fact that the fund was promoted in part by his own contributions can not alter the case. It can not be denied that the company also contributed to the fund, by its agreement to make up deficits, furnishing surgical aid, being responsible for its funds, etc. We can not look to the question of the inadequacy of the consideration. After the injury was incurred, the appellant was at full liberty to compromise the damages with the appellant for any valuable consideration, however small, and if he chose to accept a less amount than that to

which he might have been entitled in an action therefor in the proper court, such settlement is nevertheless a full accord and satisfaction from which the courts can not relieve him.

The question of the validity of such a contract as that relied upon in this answer is a novel one, at least in this State, our attention having been called to no case, in either of our courts of last resort, in which it was considered or involved, and we know of no such case. The question has, however, received the consideration of reputable courts in other jurisdictions, and to some of the cases in which it has come under review, counsel have cited us.

The case of *Owens* v. *Baltimore, etc., R. R. Co.*, 35 Fed. Rep. 715, originated and was determined in the United States Circuit Court, S. D. Ohio, E. D. It was a suit to recover damages from the company for personal injuries received by Owens while employed as fireman, and resulting from the alleged negligence of the company. Owens was a member of the Baltimore and Ohio Relief Association, an organization chartered under the laws of Maryland, for the purpose of affording relief in case of accident, and in case of disability by illness, to the employes of the railroad company, certain officers of that company being *ex officio* directors of the relief association, and the president of the railroad company being *ex officio* president of the relief association. The charter of the relief association provided that the railroad company should guarantee the performance of the contracts of the relief association, and, under further authority given the railroad company under its charter, that company provided a guaranty fund of $100,000. One of the conditions of the guaranty, as expressed in the by-laws of the association, was that whenever a claim was made against the association for relief, the claimant should

first file a release of the railroad from any claim for damages.

Owens contended at the trial that the provision in the by-laws of the association requiring, as a condition precedent, the filing of a release of the defendant from any claim for damages, was void, as against public policy. The court, upon these propositions, instructed the jury as follows:

"It is urged that that was an illegal arrangement; that the law does not permit an employer to stipulate for immunity from the damages which his employes may sustain by reason of his negligence. That, as a general proposition, gentlemen, is well stated. That is the law. But it does not apply to this case, for this reason: There is no stipulation that the members of the relief association shall not be at liberty to sue the Baltimore and Ohio railroad company for damages resulting from accidents attributable to the negligence of that company. If there were, that, in my opinion, would be an illegal stipulation. It would be against public policy. But the stipulation is, in effect, that when a member of the relief association, who is an employe of the Baltimore and Ohio Railroad Company (and no one else can be a member), sustains such injuries, he may make his election to sue the railroad company for damages, or, waiving that right, he may rely upon the benefits stipulated by the relief association.

"Now, that is perfectly legitimate and proper, and there can be no possible objection to it.  *   *   *   *  It puts him to his election. He can sue the railroad company, or he can take the benefits from the relief association. This is quite as legitimate as it is to settle claims of this character out of court by private negotiations, which is done constantly, and, if fairly done, nobody thinks of questioning it."

In passing upon the motion for a new trial the court, Judge SAGE delivering the opinion, reaffirmed the propositions of law contained in this and other instructions, though upon other questions it rendered judgment in favor of the plaintiff.

The case of *State* v. *Baltimore, etc., R. R. Co.*, 36 Fed. Rep. 655, was decided in the United States Circuit Court for the district of Maryland. In that case the widow of an employe of the railroad company, after the death of her husband, released the company from any claim she might have against it for causing his death, for the purpose of enabling her husband's mother to obtain from the B. & O. Relief Association payment of an amount of life insurance, which, under its constitution, was payable only on condition that all persons entitled to sue the railroad company for the death should release such company from liability. In a suit by the widow against the railroad company for damages it was held, MORRIS, J., delivering the opinion, that there lease was not invalid as against public policy.

The same question was before the United States Circuit Court of the district of West Virginia in the case of *Martin* v. *Baltimore, etc., R. R. Co.*, reported in 41 Fed. Rep. 125. It was held in that case, as we learn from the syllabus, that "where an employe of a railroad company becomes a member of a relief association, and as a condition of membership, and in consideration of the contributions of the railroad company to said association, and of the company's guaranty of the payment of the benefits of the association in case of injury, signs a contract by which he releases the company from liability by reason of any accident that may happen to him while in the company's employ, an action will not lie against the company, where, both before and after bringing action, he receives money from the association on account of

the injury, and gives receipt releasing and discharging the company from all claims for damages.''

The question of the validity of these contracts was also before the court of appeals of Maryland, in *Fuller* v. *Baltimore, etc., Assn.*, 67 Md. 433; 10 Atl. 237. In passing upon the provision in the constitution of the association requiring a person entitled to sue the company for damages arising from its negligence, to release such company from liability before receiving benefits from the relief fund, the court said:

''Nor can we see that this third clause of the constitution is so unreasonable that the court can declare it void. The occupation of many of the employes of a railroad is especially hazardous. Accidents are constantly happening to them without default on the part of the company that employs them. In such cases they can have no redress except from an insurance. A compulsory insurance may at first blush seem harsh, but an insurance to some extent by general consent is deemed advisable, especially to those who have others dependent upon their daily labor. The provision against the double benefit and exacting the release, is one not unreasonable for the company to make, interested as it is as a guarantor and in other ways. The employes have the right to decline the service of the company under such conditions, but if they accept it, knowing the conditions, they are bound by them, unless these conditions are so unreasonable that a court would pronounce them void.''

The question was again considered by the same court, *Spitze* v. *Baltimore, etc., R. R. Co.*, reported in 23 Atl. Rep. 307, and 48 Am. and Eng. R. R. Cas. 495, which was an action for a personal injury received by a servant of the company, on account of its alleged negligence. The company, in defense of the action, pleaded certain releases executed in accordance with the regulations of

the relief association. On the trial the court instructed the jury that the releases were a bar to the plaintiff's right of recovery, unless it appeared that they were procured by means of fraud. On appeal the instruction was held correct.

This question appears also to have been before the Supreme Court of Pennsylvania in the case of *Graft* v. *Baltimore, etc., R. R. Co.*, reported in 8 Atl. Rep. 206, although we do not find that the court expressed any opinion upon the validity of such contracts, further than to uphold instructions to find for the defendant, when it appeared that the plaintiff, who had been injured through the alleged negligence of the defendant, was a member of the relief association, and had accepted benefits and signed a release.

The learned counsel for the appellant have not referred us to any authority where a view has been adopted which is opposed to those expressed in the cases from which we have quoted, and in our investigation of the question we have found none. It may be truly said, we think, that by virtue of the contract and release pleaded in the answer before us, the appellee was enabled to discharge its liability by the payment of a much smaller amount of damages than the appellant might have been able to recover in this action upon the alleged tort, had it not been for the contract and acceptance of benefits, and that thus, in a certain sense, the appellant will succeed in at least curtailing its liability by a contract made in advance of the injury. But notwithstanding the contract made with the employer, in advance of the injury, the fact remains true, that the appellant was in no sense compelled to receive the compensation growing out of the relief fund, and that, when he did so, he practically made a new contract with the company, by which he agreed to accept the amount offered him in full satisfac-

tion of the damages. Having placed himself in this predicament, he is in no position to require the courts to extricate him therefrom. The rule that an employer can not exempt himself from liability arising from injury to his employe, on account of the employer's negligence, by a contract entered into between the two at a time prior to the injury, is, therefore, not applicable.

It is proper to note here some distinction between the contract relied upon in the present case, and those mentioned in the cases cited as existing between the Baltimore and Ohio Relief Association and the employes of the Baltimore and Ohio R. R.· Co. The contracts of the Pennsylvania Company are not compulsory upon its employes. No one of the company's servants is required to become a member of the relief society. This is not true of the Baltimore and Ohio Company, as the decisions referred to show, for every servant of that corporation is compelled, before he receives employment, to acquire membership in the association. It can not be said, therefore, that the rules of the appellee in this regard operate as harshly upon its employes as those upheld by the cases cited. In fact the entire connection of the appellee's servants with the relief fund, from the act of becoming a member to that of accepting its benefits, is purely voluntary.

. Nor is it easy to perceive upon what principle the contract can be held void from considerations of public policy. There is no rule of public policy which discourages the settlement of claims of this character by compromise, when made in good faith, and, as we have seen, the payment and acceptance of the benefit money in the present case were nothing more nor less than an adjustment and compromise of the claim after the injury. Besides, the general beneficial results inuring to a member of this association, are such as to commend it to public favor

rather than otherwise. Membership in the relief association not only enables the employes who take advantage of it to relieve their pecuniary wants in the early periods of disability arising from injury received in the company's service, and from ordinary disease or illness, but such relief is continuous, as long as the member is in good standing, excepting a reduction of one-half after the first year, until the death of the member, and even then his family or other beneficiaries are entitled to draw death benefits, and all the funds needed for the payment of these are guaranteed by the company.

There could certainly be no just ground upon which the general contract of membership, and its resulting benefits, could be held void as against public policy.

The only basis upon which such a claim could stand for a moment, is that that portion of the contract, by virtue of which the acceptance of benefits operates as a release of the company, is an attempt to contract against liability for negligence in advance of any injury. The impediment in the way of such a conclusion, however, is that the contract out of which the release arises is really not concluded until after the injury, and that the same is based upon a consideration paid and voluntarily accepted also subsequently to the injury, and these several acts constitute the contract a compromise between the parties, which is not obnoxious to, but favored by, considerations of public policy.

Appellant's counsel undertake to demonstrate from the printed rules and regulations exhibited with the pleading before us, that the appellee is not a member of the relief association, or that the contract relied upon was not really between the appellant and appellee, but between the appellant and the relief association, and that for these and other reasons such contract is void for want of mutuality.

Lease *v.* Pennsylvania Company.

Even if the fact were demonstrable that the appellee was not a member of the relief association, the result claimed would not follow, for, as held in the Baltimore and Ohio cases, the fact that the company contributed to the fund which the appellant accepted, amply supports the release. But it abundantly appears from this answer, that the appellee is a member of the relief association, and a party to the contract by which the appellant secured his membership, and under which he obtained and accepted the benefits.

Nor can we regard the contract void for the want of a consideration. We have already shown, we think, that if there was any consideration whatever for the compromise, it must be upheld. The company, besides promoting the objects of the relief association by encouraging other employes to join it, supplying appropriations when necessary to make up a deficit, taking charge of, with the other companies, and managing the general affairs of the concern, furnishing the facilities for conducting the business, and paying all the operating expenses, also makes itself jointly liable with the other companies for the safe keeping of all funds, and guarantees the fulfillment of the obligations of the relief association. These contributions on its part, in our judgment, constitute a valid consideration in discharge of the company's liability for negligence, if paid and accepted with that end in view.

After a careful consideration of all the questions presented, we find no error in the overruling of the demurrer.

Judgment affirmed.

Filed May 8, 1894.