## Pittsburg, Cincinnati, Chicago and St. Louis Railway Company v. Carmody.

(Decided June 18, 1920.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch No. 3).

Contracts—Master and Servant—Contract Between Carrier and Employees for Payment of Benefit Fund—Release—Public Policy. —A contract entered into between a common carrier and its employees, by which an association is formed, composed of the employees of the carrier who are not required to become members, and the purpose of which is to create and administer a fund, out of which to pay a benefit in stated amounts and at stated times, to the employees, who are members of the association, when disabled from sickness or injury, and a death benefit to a person selected by the employee, and when an injury is incurred from the negligence of the carrier, the employee may insist upon his right of indemnity against the carrier, but, if after the injury is suffered, elects to accept the benefits to be received under the regulations of the association instead of pursuing his remedy against the carrier, thereby releases his claim for damages against the carrier; the funds of the association arising from contributions paid monthly by the employee members, the carrier paying all expenses of the administration of the association, and supplying, at its expense, the facilities for its administration, and keeps the funds, being responsible for their safety, and agreeing to pay any deficits in the funds, arising from the contributions of the employees not being sufficient to pay the benefits, is not a contract prohibited by section 196 of the Constitution, nor is it violative of the public policy of the state.

TRABUE, DOOLAN & CRAWFORD and CHARLES W. MILNER for appellant.

ELMER C. UNDERWOOD, J. L. RICHARDSON and S. L. TRUSTY for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The appellee, Thomas Carmody, was an employee, of the appellant, Pittsburg, Cincinnati, Chicago and St. Louis Railway Company, for the performance of the duties of a switchman, in the yards of the appellant company, in Louisville, and upon its moving trains from its yards, in Louisville, to other yards and tracts of appellant near Jeffersonville, Indiana. The appellant was a common carrier. Carmody instituted this action against

the railway company and one of its employees, alleging, that on November 24, 1905, as the result of the negligence of the defendants, he was severely and permanently injured, and sought a recovery of damages as compensation for his injuries. The appellant, company, by the first paragraph of its answer denied the alleged negligence, and by a second paragraph of its answer, an amended answer, and answer to an amended petition pleaded as a bar to the prosecution of the action, in substance, that during a long time, it in conjunction with its employees had been maintaining in connection with its organization, and conduct of its business as a common carrier a department, which was known as the Voluntary Relief Department of the Pennsylvania lines west of Pittsburg; that the department was an organization for the purpose of providing indemnity for the employees of appellant, in the event of injury, sickness or death, and that the indemnity was due and payable to the employees, when injured, whether the injury was the result of the negligence of the railway company, or of the employee himself, or whether there was negligence on the part of any one; that the department was maintained by contributions of the employees who were members thereof, at fixed rates and stated intervals, and by contributions of the appellant, it having agreed upon its part, and as a part of the contract of the organization of the department, that it would pay the expenses and costs of the operation and maintaining of the department and to pay any deficit, that might result from the sums paid in by the employee members, being insufficient to pay the indemnities or benefits to which sick or injured employees were entitled, or to pay death benefits, under and in accordance with the rules and regulations of the department; that at the time and before the injuries suffered by the appellee, he had, upon his application, become a member of the voluntary relief department, and was a member thereof in good standing, at the time of his injuries, and was entitled to the benefits of the organization, in accordance with its rules and regulations, and entitled to receive the benefits allowed by the department from its relief fund, for injury, sickness or death; that in becoming a member of the department, the appellee had agreed to and with the department and appellant, that, if he should accept benefits from the relief funds of the department for injuries

suffered by him or death, that such acceptance would work a release of any claim, for damages against the appellant arising from the injury or death; that when he received the injury complained of by him, the appellee was at liberty, either to accept the benefits provided by the voluntary relief department, or to assert a claim for compensation against the appellant, by way of action for damages; that after he sustained the injury, the appellee voluntarily elected to accept the benefits provided by the department from its relief funds, and that such benefits were paid to him thereafter, until April 30, 1906, when he had received in benefits, the sum of $225.00, and at that time, under the terms and conditions of his membership, his right to receive further benefits ceased; that by his election to receive the benefits, provided under the rules and regulations of the relief department, and his acceptance of them, he had thereby released any claim for damages, which he had against appellant, growing out of his injury; and that he had thereafter instituted this action without having returned or offered to return the funds, which he had received from the relief department, and which he would not have received, but, for his election to accept same, and to waive any claim, which he had against appellant. A copy of the appellee's application for membership in the department, and a copy of the regulations of the voluntary relief department were filed with the answer, as a part thereof. The answer and amended answer contained the averment, that the application of appellee to become a member of the voluntary relief department which appellee had subscribed and agreed thereto, contained the following stipulation:

"I agree that the acceptance of benefits from said relief fund for injury or death, shall operate as a release from all claims for damages against said company (the appellant) arising from such injury or death, which could be made by or through me, and that I or my legal representatives will execute such further instrument as may be necessary formally to evidence such acquittance."

The regulations of the voluntary relief department were alleged to contain the above quoted stipulation and in addition thereto, the following:

"Should a member or his legal representative bring suit against either of the companies now associated in

administration of the relief department, or that may hereafter be so associated, for damages on account of injury or death of such member, payment of benefits from the relief fund on account of the same shall not be made until such suit is discontinued. If prosecuted to judgment or compromised, any payment of judgment or amount in compromise shall preclude any claim upon the relief fund for such injury or death.''

To the above plea in bar of the action, a demurrer was sustained, it being the opinion of the learned trial judge, that the facts stated did not constitute an estoppel to or other valid defense to the action.

A trial of the action resulted in a verdict and judgment for the appellee, and the railway company appeals, and relies solely for a reversal of the judgment, upon its contention that the court was in error, in sustaining the demurrer to the recited plea in bar, and denying it a defense founded upon the facts therein alleged.

The appellee earnestly insists that the plea is insufficient in law, for three principal reasons:

First: The contract alleged by appellant to have existed between it and the appellee and the voluntary relief department was prohibited by section 196 of the Constitution, and was void as against the public policy of the state.

Second: The contract was not mutual, nor supported by any consideration coming from the appellant, and therefore was not binding.

Third: The regulations of the voluntary relief department, together with the admissions of the answers as amended show that the appellee was entitled to receive benefits from the relief fund of the department, during his entire life, and that it ceased to pay the benefits, after having paid $225.00 on April 30, 1906, after which the action was instituted.

(a) Section 196, of the Constitution, renders void any contract which is prohibited by its provisions. The portion of section 196, which is relied upon as prohibitive of the contract alleged, is as follows: "No common carrier shall be permitted to contract for relief from its common law liability.'' The common law liability of a railroad company to one of its employees for an injury sustained by the employee, and resulting from the negligence of the railroad company, was to compensate the employee for the damages sustained by him, by reason,

of the injury. It may be conceded, that a contract, entered into between a railroad company and one of its employees, by the terms of which it is contracted, that the company shall not be liable for damages because of an injury, which may be thereafter suffered by the employee on account of the negligence of the company, is void as against public policy, as well as contravening the provisions of the Constitution, *supra,* but, to deny to a railroad company and one of its employees the power to agree upon a binding settlement of the amount of the damages to which the employee is entitled for an injury suffered by him on account of the negligent act of the company and to deny to the company the right to pay the employee the damages, which the latter is willing to receive in settlement of his claim, and the employee the power and right to contract for such settlement and to receive payment, would compel all such adjustments to be made at the end of litigation and by the judgment of a court, which is contrary to the public policy of this and every other state. It is evident, that it is the liability for a future injury, which the railroad company is prohibited from contracting against and not a liability for an injury from negligence, which has already occurred. Several states have constitutional provisions and statutes, with provisions similar to section 196, *supra,* and in no one of them has the provision been so construed, as to prevent an accord and satisfaction between the carrier and one of its employees, for the claim of the employee for an injury, which has already been suffered. In the contract which appellant relied upon, as embraced in its answers and in the regulations of the voluntary relief department, which were presented as a part of the answer, there was no attempt by the appellant to contract for relief against its common law liability, or any liability to which it was subject or to limit such liability. The contract provided a means of indemnity for the employee when disabled from sickness or injury, and so, whether the injury arose from his own negligence or that of another, or from unavoidable accident, without fault of any one, but, when the injury suffered was attributable to the negligence of appellant, it did not affect any cause of action, which the employee had against appellant for damages on account of the injury, until by his own voluntary action, the employee elected to receive the benefits provided by the voluntary

relief department, as compensation for the injury, and when he did so, in consideration of the benefits to be received, he contracted to release his claim against appellant. The contract in no way limited the liability of appellant, nor was it released from liability to an action for damages for an injury to the employee from negligence, but, it was the acceptance of the benefits of the relief department, as a satisfaction of the claim for damages against appellant, which worked the release, and this had to occur according to the contract after the injury had been sustained. It is a contract to settle the past and not one providing for the future. A contract to be against public policy must be such a one as has a mischievous tendency, and in some way militates against the public welfare and the rights of the public. It cannot be successfully asserted that the contract under consideration has any such effect. A contract which has the effect of enabling an employee to receive indemnity for injuries from sickness and accident, and does not take any right of action for negligent injury away from him, except by his own election and after the injury has occurred when he is free to sue for his injury or to settle the claim by contract, does not appear to carry with it any tendency to mischief nor contravene any public right in any discernible way. The right to contract is a right vouchsafed to every citizen by the law of the land, if the subject of the contract is a lawful one, and the person making same is *sui juris,* and the exercise of the right does no injury to the public. Because a man makes a contract, which is bad, and not the best one which he might make under the circumstances, is no reason for taking away from him the right to contract about his own affairs, nor is such a reason sufficient to set aside a contract understandingly made, with all the facts before him. Contracts similar to the one relied upon by appellant have been under consideration by the courts in various jurisdictions, in some of which were constitutional and statutory provisions similar to that embraced in section 196, of our Constitution, and where it was violative of the public policy to permit a common carrier to contract for relief against its common law liability and while all of the courts have not agreed, the great weight of authority is to the effect, that such a contract does not contravene a sound public policy. The trend of authority may be ascertained from the follow-

ing descisions: Johnson v. Railway Co., 58 S. C. 488; Petty v. Brunswick & Western Ry. Co., 109 Ga. 666; Eckman v. Railroad Co., 169 Ill. 312; Johnson v. Railroad Company, 163 Pa. St. 127; Ringle v. Railroad Co., 164 Pa. St. 529; Fuller v. B. & O. Employers' Ass'n, 47 Md. 433; Spitze v. Railroad Co., 75 Md. 162; Leas v. Pennsylvania Co., 10 Ind. App. 47; Pittsburg, etc. Ry. Co. v. Moore, 152 Ind. 345; P. C. C. & St. L. Ry. Co. v. Cox, 55 Ohio, St. 497; Maine v. Railway Co. (Iowa), 70 N. W. 630; Chicago R. R. Co. v. Bell, 44 Neb. 44; Donald v. Railway Co., 93 Iowa 284; Shaver v. Pennsylvania Co., 71 Fed. 931; Otis v. Penna. Co., 71 Fed. 136; State v. Railroad Co., 36 Fed. 655; Owens v. Railroad Co., 35 Fed. 715; Chicago R. R. Co. v. Curtis, 51 Nebr. 442; Graft v. Railway Co., 8 Atl. 206; Martin v. B. & O. R. R. Co., 41 Fed. 125; B. & O. v. Bryant, 9 Ohio C. C. 332; Day v. Atlantic Coast Line, 179 Fed. C. C. A.; Judy v. Louderman, 48 Ohio St. 562; Atlantic Coast Line v. Beazley, 54 Fla. 311; Hamilton v. R. R. Co., 118 Fed. 92; Johnson v. C. & S. R. R., 55 S. C. 152; King v. R. R. Co., 157 N. C. 44; Harris v. A. & Midland, 144 Ala. 246; Drobney v. Lukins, etc., 204 Fed. 11; Pennsylvania Co. v. Reager's Admr., 152 Ky. 824.

(b)   The contract is not unenforceable for want of mutuality and consideration.   While the appellee and other employees of the various railroads, which jointly administered the affairs of the voluntary relief department, each contributed to the funds of the department, a small   sum   from  his  wages,  each  month,  they received the entire benefits of the fund.   The amount of the benefits, when paid to an employee was   not   controlled by the sum paid in by him, nor the state of the treasury of the department.   The appellant, together with the other railroads, who were interested in administering the department, paid all the expenses of the administration of the department, supplied at its expense, the necessary facilities for conducting its business, held the funds of the department and were responsible for its safekeeping, and agreed to pay into its treasury the sums necessary to cover any deficits, which might arise therein from the contributions of the employees, at any time, not being sufficient to meet the demands of the treasury, in paying the benefits to which the members were entitled, on account of disablement from sickness, accident or injury of any kind, under the regulations of

the department. The agreement made by the company and the employees were concurrent and obligatory upon both, and each agreed to pay in consideration of the promises and payments by the others. Discussing a contract, not exactly like the one under consideration here, but, containing the same essential features, it was said in Petty v. Brunswick & Western Ry. Co., *supra*: "That such a contract secured to an employee substantial benefits and that the master contributed to the fund for the payment thereof, constituted a valuable consideration as to the employee; and this is true, though he himself made a small monthly contribution to that fund. A contract of this kind is not wanting in mutuality." In Railway Co. v. Cox, 55 Ohio St. 576, touching a similar contract, the court said: "The promises are concurrent and obligatory upon both; both promise and both pay in consideration of promises and payments by the other; and the fact that third persons are interested does not impair the force of the obligation. If these stipulations do not supply consideration, it would be difficult to frame such as would; and there being express assent to the terms of the contract by both parties, the element of mutuality is not wanting." The same views as the above are expressed in Judy v. Louderman, 48 Ohio St. 562; Leas v. Penna. Co., 37 N. E. 423, and Otis v. Penna. Co., *supra*.

(c) It is insisted for appellee, that the pleadings admit that his injury was such, that by reason of the rules and regulations of the relief department, he was entitled to receive benefits for a greater length of time, than same were paid to him, and that at the time of the institution of this action, he was still entitled to receive benefits, although the relief department had then ceased to pay them to him. It is urged, that the plea in bar is insufficient, in that it does not aver that the appellee had received all the benefits which under the contract, he was entitled to receive, the allegation upon that subject being a conclusion and not an averment of facts, which show a complete satisfaction; treating the acceptance of the relief department contract, as an accord of the claim of appellee for damages for his injuries. This contention would be correct, if the contract, which constituted the accord, provided, that the accord should be satisfied in full, before it should be a binding settlement and obligatory upon the appellee.

There can be no dispute of the common law principle, that where an accord is based upon a contract or agreement, which provides for the performance of certain acts in satisfaction of the cause of action to be released, that the satisfaction and release are not effected, until a full performance has occurred. Where, however, the accord consists of a promise or of the making of a contract to be performed, in the future, and this promise or contract is accepted in satisfaction of the cause of action, the cause of action is released, and the party releasing the cause of action, which he had and accepting the promise, in satisfaction of it, must thereafter look to the promise, and not his original cause of action. 1 R. C. L. 199-200; B. & W. Ry. Co. v. Clem, 80 Ga. 539. It is evident, in the instant case, and the averment of the answer and its amendments substantially alleged that the appellee after receiving his injury, accepted the benefits provided by the relief department, and thereby elected to release the appellant from his cause of action, and as an accord and satisfaction of the claim, which he had against appellant agreed to accept and to receive the benefits provided for him by the regulations and provisions of the relief department. It would appear, that this is conclusively true, if appellee's contention as to the construction of the relief department contract is correct, and that under same he was entitled to receive the benefits during his lifetime, since, if there was no release of his cause of action against appellant until the relief department had paid to him all the benefits to which he was entitled, under it, there would be no settlement and release of the cause of action during the lifetime of the appellee. Such was evidently not the intention of the parties, in making the relief department contract. As said in Pennsylvania Co. v. Chapman, 220 Ill. 428, although in that case the conclusion was different from the one here, arrived at, "The agreement on the part of plaintiff, that the acceptance of benefits from the relief fund should operate as a release of all claim for damages against the company is to be construed in connection with the by-laws, which amount to an agreement on the part of the relief department that it would pay him certain specified benefits." The contract under which the relief department was created and conducted provided for certain benefits to which its members were entitled, in case of disablement from sickness or acci-

dent, and for injury from the negligence of the employer, if the injured employee agreed to accept them in lieu of his claim for damages against the employer, and it was agreed, that if the employee elected to receive such benefits, his action, in so doing operated to release his claim against appellant for damages. He was to receive compensation for his injuries, one time, but not twice. The beginning to accept of the benefits of the relief department by the injured employee was agreed upon between employer and employee, as the act determinative of the fact, that the agreement between them, that the employee had accepted the benefits of the provisions of the relief department contract, as an accord, and satisfaction of his claim for damages had been entered into. Among the courts there has not been entire agreement, as to the effect of the acceptance of benefits under a contract similar to the relief department contract, here, certain of them holding that to cause such acceptance to work a release of the employee's claim for damages against the employer, in addition to the acceptance of benefits, it must, also, be shown that the relief department had performed its entire contract, while the holding of the others has been, to the effect, that the acceptance of benefits worked an acceptance of the relief department contract, as an accord and satisfaction of the employee's right of action against the employer, and a release of same, and thereafter each of the parties must look to the contract, which had been entered into as an accord and satisfaction, and the employee must depend upon its enforcement for his compensation. The latter seems to be the more logical conclusion from the necessary results of the transaction. Discussing this phase of the results of such a contract, in Johnson v. Railway Co., 58 S. C. 488, the court said: "If the contract set up in the answer is a valid contract and plaintiff has elected to accept and has accepted benefits thereunder, he could not escape the contract of release, because a full tender of all payments due under the contract had not been made to him. By the contract and election to accept certain benefits and payment, he released the defendant from liability. The consideration for the release was the obligation or promise of the association to do certain things and the release was not conditioned on full performance by the association. For

full performance of the contract by the association the plaintiff . . . has his remedy under the contract." In Petty v. Brunswick & Western Ry. Co., 109 Ga. 666, the court, considering a contract similar. to the one here relied upon, said: "The acceptance by an injured employee of any benefit under a contract of the kind is an election on his part to look exclusively to that source for compensation on account of the injury, and amounts to a complete accord and satisfaction of his claim for damages against his master therefrom arising." Hence, it would appear, that the appellee by the acceptance of benefits under the relief department contract because of his injury accepted that contract with its promises and obligations, as an accord and satisfaction of his claim for damages against appellant, and released the claim against appellant, and upon the failure of the relief department to perform its contract, the appellee was relegated to his remedies upon and under that contract. Penna. Co. v. Reager's Admr., 152 Ky. 824. It was, therefore, not necessary for the appellant to aver a complete performance of the contract by the relief department, but, it was sufficient to allege, as a defense, that the appellee had agreed to accept the benefits provided by the contract of the relief department as compensation for his injury, as an accord and satisfaction of it, and that his claim against appellant was released in consideration of that contract. This the answer substantially alleged.

The trial court was therefore, in error, in sustaining a demurrer to the plea, in bar, and the judgment is therefore reversed, and cause remanded for proceedings, not inconsistent with this opinion.

All members of the court, sitting.